UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANK'S LANDING INDIAN
COMMUNITY et al.,

Plaintiffs,

v.

LINDA MYHRE ENLOW, in her official
capacity as Clerk of the Superior Court for
Thurston County, Washington,

Defendant.

CASE NO. 3:25-cv-05929-TL

ORDER ON MOTION FOR
PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction. Dkt. No. 8. Having reviewed the motion, Defendant's response (Dkt. No. 22), Plaintiffs' reply (Dkt. No. 24), and the relevant record, and having heard oral argument on March 25, 2026, the Court DENIES Plaintiffs' motion.

## I.    BACKGROUND

Plaintiffs (alternatively, "state-court defendants") seek this Court's intervention in a state-court matter. *See generally* Dkt. No. 1 (Complaint). Plaintiffs are defendants in *Wa He Lut*

*Indian School v. Anza Smith* (the "*Wa He Lut* case" or "underlying state-court case"), a case presently pending in Thurston County Superior Court, the Honorable Chris Lanese, presiding. *See id.* at 1–2. Plaintiffs assert that the state court lacks subject-matter jurisdiction over the *Wa He Lut* case, and that the Superior Court's proceedings therefore violate federal law. *See id.* ¶¶ 4–6.

**A.     Frank's Landing Indian Community**

Frank's Landing Indian Community ("FLIC") is a "self-governing dependent Indian community" located in Washington. *See id.* ¶ 10 (quoting *Frank's Landing Indian Cmty. v. Nat'l Indian Gaming Comm'n*, 918 F.3d 610, 616 (9th Cir. 2019)); *see also* Pub. L. No. 100-153 ("Indian Law Technical Amendments of 1987"), § 10, 101 Stat. 886, 889 (1987). As described by a court in this District,

> Frank's Landing consists of three parcels of land that are held in trust by the United States for the benefit of Individual Indians and located within the Nisqually River Basin, outside the Nisqually Tribal Reservation. These parcels are known as allotments. The government gave these allotments to Individual Indians in 1918 when part of the land constituting the Nisqually Reservation was taken to create the Fort Lewis Military Reservation.

*Nisqually Indian Tribe v. Gregoire*, 649 F. Supp. 2d 1203, 1205 (W.D. Wash. 2009). Plaintiffs assert that FLIC "qualifies as 'Indian Country' under 18 U.S.C. § 1151(b)."[1] Dkt. No. 1 ¶ 10 (citing *Frank's Landing*, 918 F.3d at 616). As such, FLIC "is not subject to state civil adjudicatory jurisdiction under 28 U.S.C. § 1360(b)." *Id.*[2] The land on which FLIC is located

---

[1] Under 18 U.S.C. § 1151, "the term 'Indian country' . . . means . . . (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state . . . ."

[2] Under 28 U.S.C. § 1360(b):

> Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States

"remains federally owned and designated for educational and cultural purposes under Public Law 96-277, § 5(a), and is administered by the U.S. Department of the Interior." *Id.*

**B.      Parties**

**1.      Plaintiffs**

Plaintiffs classify themselves into two groups: Frank's Landing Indian Community Council and Individual Community Members. *See id.* ¶¶ 15–20. The Community Council Plaintiffs, each of whom is a defendant in the *Wa He Lut* case, are members of the governing body of FLIC. *See id.* ¶ 15. The Community Council Plaintiffs include: Yesmowit Mills, chairman; Keetchud'cabacud Kay Mills, vice chair; Chi-Tol-Bia Mills, secretary; Yekaboltza Mills, council member; and Marie Frank Ironpipe, council member. *Id.* ¶ 17. The Community Member Plaintiffs, each of whom is also a defendant in the *Wa He Lut* case, include: Deona McCloud, Ervina "Binah" McCloud, Sy-ka Mills John, and Clarence Sidney Mills. *Id.* ¶¶ 19– 20.[3]

**2.      Defendant**

Defendant, Linda Myhre Enlow, is the clerk of the Superior Court for Thurston County, Washington. *Id.* ¶ 26. Defendant is sued in her official capacity. *Id.*; *see* RCW 2.32.050 ("Powers and duties of court clerks").

---

or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

[3] On March 31, 2026, the Parties stipulated to the dismissal with prejudice of three Plaintiffs: Qual-Beet-Tub Mills, Dillon Woodward, and Dakota Case. Dkt. No. 39.

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 3

**C.** *Wa He Lut Indian School v. Smith*[4]

It is not necessary for the Court to discuss all the facts or procedural intricacies of the underlying state-court matter. *See* Dkt. No. 1-5 (state-court complaint) ¶¶ 1–53. To be clear, the merits of the *Wa He Lut* case are not at issue here. Rather, this Court is charged with determining whether the merits of the *Wa He Lut* case may be legally adjudicated in state court. Because Plaintiffs here challenge the jurisdiction of the Thurston County Superior Court to entertain the *Wa He Lut* case, this Court will endeavor to explain the allegations and causes of action in that case. The Court cautions that what follows is a recitation of *allegations*, not proven or established facts. Further, the Court omits details here that do not meaningfully contribute to an understanding of the issues in this federal-court action. This summary should not be regarded as the Court's endorsement of the alleged facts it has included, nor should it be taken as a disavowal of the alleged facts it has omitted.

### 1.   Substantive Background

"In 1974, individuals associated with the Frank's Landing Indian Community founded the [Wa He Lut Indian] School to ensure that Native American children would receive the education promised to them in the Medicine Creek Treaty." *Id.* ¶ 7.[5] In 1980, title to the 6.33-acre property on which the School sits "passed in fee status to 'the Secretary of the Interior for the Wa-He-Lute [*sic*] Indian School for its use as an Indian school and community center for education or cultural purposes.'" *Id.* ¶ 10 (quoting Pub. L. No. 96-277, § 5(a), 94 Stat. 546 (1980)). "Today, title to the land 'remain[s] in the United States under the administration of the

---

[4] Plaintiffs attached to their pleading the Second Amended Complaint ("SAC") in the underlying state-court matter. Dkt. No. 1-5. Plaintiffs also attached a proposed Third Amended Complaint ("TAC") in the underlying state-court matter. Dkt. No. 1-6. As there is no indication that the TAC is anything more than a proposed pleading, this Court considers the SAC to be the operative pleading in the state-court case. In reciting the background of the *Wa He Lut* case here, the Court relies on the allegations pleaded in the SAC.

[5] *See* Dkt. No. 1-15 (Treaty of Medicine Creek, 10 Stat. 1132 (1854)).

Secretary of the Interior who shall hold the . . . tract of land for the Wa-He-Lute [*sic*] Indian School so long as it is used for any of the above-mentioned purposes.'" *Id.* (quoting Pub. L. No. 96-277, § 5(b)). Beyond the 6.33-acre parcel on which the School is located, the School "owns four other properties adjacent to the School's property" in fee status. *Id.* ¶ 16.

On or about March 17, 2022, Plaintiffs Yesmowit Mills, Keetchud'cabacud Kay Mills, Chi-Tol-Bia Mills, Yekaboltza Mills, and Marie Frank Ironpipe were appointed members of the Frank's Landing Community Council. Dkt. No. 1 ¶¶ 15, 17; Dkt. No. 1-5 ¶ 23.[6] In or around 2022–23, the state-court defendants developed an allegedly "illegal cannabis retail operation" on a neighboring property "within 100 feet of the School." Dkt. No. 1-5 ¶ 26. In and around March 2023, the state-court defendants placed signs advertising the cannabis retail operation "on the School's adjacent fee parcels, without the School's permission." *Id.* ¶ 28. "In and around the spring of 2023, one or more [state-court defendants] repeatedly trespassed upon the School fee land to affix water hoses to the School building and converted water for their own use at nearby residences . . . , at the expense of the School." *Id.* ¶ 30. On June 28, 2024, the Wa He Lut Indian School Board sent a cease-and-desist letter to the state-court defendants, advising that "[a]nyone who steps foot on Wa He Lut Indian School . . . grounds without permission or to cause trouble will be subject to trespass." *Id.* ¶ 36. After the state-court defendants received the letter, however, "a group of one or more [state-court defendants] went to the School . . . ." *Id.* ¶ 38. Then, "a group of one or more [state-court defendants] cut the padlock securing the front gate of the School and replaced it with [state-court defendants'] own padlock." *Id.* ¶ 39. "On or around July 8, 2024, a group of one or more [state-court defendants] entered the School's property through the front gate and broke into the School building, triggering the School's security alarm system."

---

[6] The legitimacy of the membership of the Frank's Landing Community Council appears to be disputed in the state-court case. *See* Dkt. No. 1-5 ¶¶ 22,23.

*Id.* ¶ 40. [State-court defendants] then "continued to trespass on School property, hacked into the School's security system to disable it, and unlawfully accessed the School's computers and information technology systems." *Id.* ¶ 41. On July 9, 2024, state-court defendants and School staff encountered each other on School grounds. *See id.* ¶¶ 42–43. Wa He Lut Indian School (state-court plaintiff) alleges that, on July 15, 2024, the state-court defendants "stole the School's public records and other personal property and transferred such records and property to an undisclosed location off of School property." *Id.* ¶ 44. The state-court plaintiff alleges that "[u]ntil about July 16, 2024, [state-court defendants] continued to occupy the School's property" and did not withdraw until "School employees posted [a] Temporary Restraining Order on the School's front entrances . . . ." *Id.* ¶ 45.

**2.     Procedural Background**

On July 12, 2024, based on the preceding allegations, the state-court plaintiff filed its original-state court complaint in Thurston County Superior Court. Dkt. No. 1-4. On September 13, 2024, the state-court judge denied the state-court defendants' motion to dismiss, finding, *inter alia*, that they had failed to establish that: (1) the state court lacked subject-matter jurisdiction; (2) the state-court defendants were immune from suit under the tribal sovereign-immunity doctrine; and (3) the state-court plaintiff lacked standing to bring the suit. *See* Dkt. No. 1-10 at 2–3. On September 20, 2024, the state-court plaintiff filed what appears to be the operative pleading in the *Wa He Lut* case, pleading four state-law causes of action against the state-court defendants: trespass (Dkt. No. 1-5 ¶¶ 54–61), conversion (*id.* ¶¶ 62–68), criminal profiteering (*id.* ¶¶ 69–75), and injunctive relief (*id.* ¶¶ 76–79).

On September 20, 2024, the state-court defendants removed the *Wa He Lut* case to federal court, where it was docketed in this District as *Wa He Lut Indian School v. Anza Smith*, No. C24-5796 (W.D. Wash.). *See Wa He Lut Indian Sch. v. Smith*, No. C24-5796, 2024 WL

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 6

4825384 (W.D. Wash. Nov. 19, 2024). The state-court plaintiff moved to remand. On November 19, 2024, the court remanded the case back to state court, having found that: (1) removal was untimely; (2) the state-court defendants had waived removal "by litigating in state court well past the 30-day removal deadline"; and (3) the state-court plaintiffs' state-court pleading did not disclose federal-question jurisdiction under 28 U.S.C. § 1331 on its face. *See id.* at *1–2. The case returned to Thurston County Superior Court, where it has proceeded. *See, e.g.*, Dkt. Nos. 1-6, 1-8, 1-9, 1-10, 1-11, 1-12, 1-13, 1-14, 23-1, 23-2, 23-3, 23-4, 23-5, 23-6, 23-7, 23-8, 23-10, 23-11, 23-12, 23-13, 23-14, 23-15, 23-16 (state-court records). After remand, the state-court defendants continued to oppose the Superior Court's jurisdiction. *See, e.g.*, Dkt. Nos. 1-12 (Feb. 20, 2025, order denying summary judgment); 1-13 (Mar. 20, 2025, order denying reconsideration).

On October 17, 2025, state-court defendants, now in the role of Plaintiffs in the instant case, filed a civil action in this Court. Dkt. No. 1. Plaintiffs seek declaratory and injunctive relief. *See id.* at 23–24. On October 24, 2025, Plaintiffs filed the instant motion for a preliminary injunction, seeking to enjoin "[D]efendant Linda Myhre Enlow, in her official capacity as clerk of the Superior Court for Thurston County, from performing any ministerial acts that facilitate state court proceedings in Wa He Lut Indian School v. Anza Smith et al., No. 24-2-02515-34, pending final resolution of this action." Dkt. No. 8 at 18. On November 14, 2025, Defendant filed a response (Dkt. No. 22), and on November 21, 2025, Plaintiffs filed a reply (Dkt. No. 24).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) authorizes district courts to issue preliminary injunctions. Preliminary injunctive relief is an extraordinary remedy that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

> To obtain a preliminary injunction, a plaintiff must establish that (1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest.

*All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter*, 555 U.S. at 20, 22–23). Ninth Circuit courts evaluate these factors on a "sliding scale"—that is, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and the injunction is in the public interest." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020) (quoting *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

### III.   DISCUSSION

In the Ninth Circuit, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 843 (9th Cir. 2024) (citation modified). But "[a]lternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor if the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 844 (citation modified). The dual approach "reflects our circuit's 'sliding scale' approach, in which the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker

showing of another." *Id.* (citation modified). Under any approach, the Court begins with an analysis of Plaintiffs' likelihood of success on the merits.

Plaintiffs assert that they are likely to succeed on the merits of this case "because federal law preempts state court jurisdiction over property rights and self-governance within Indian country." Dkt. No. 8 at 6. In response, Defendant presents four procedural arguments: (1) that Plaintiffs lack standing under Article III of the United States Constitution; (2) that Plaintiffs' claim(s) are barred by the Eleventh Amendment to the Constitution; (3) that Defendant Enlow is entitled to quasi-judicial immunity; and (4) that Plaintiffs' claim(s) are precluded by the *Rooker-Feldman* Doctrine. *See* Dkt. No. 22 at 9–17. Because a preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," finding some merit in Defendant's four arguments casts a cloud of doubt on the merits of Plaintiffs' case that is sufficient to defeat the instant motion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Wright & Miller's Federal Practice & Procedure § 2948 (2d ed. 1995)); *see Harrison v. Cary*, No. C26-353, 2026 WL 295712, at *2 (W.D. Wash. Feb. 4, 2026) (finding that plaintiff seeking temporary restraining order failed to meet her burden of showing that she was likely to succeed on her claims because "[s]everal legal doctrines appear[ed] to preclude some or all of [her] claims").

The Court now considers Defendant's procedural arguments.

**A.    Sovereign Immunity and Standing**

Defendant argues that Plaintiffs "have not brought forward an actual case or controversy" and, therefore, "lack standing." Dkt. No. 22 at 9. Plaintiff argues further that Defendant Enlow, "in her capacity as clerk of the state superior court of the county, is immune from suit under the Eleventh Amendment to the United States Constitution." *Id.* at 11. The Court's inquiries into sovereign immunity and standing are closely connected here. "The Ninth Circuit has regularly

combined the analysis required for the second and third prongs of standing with tests assessing the appropriateness of state officials for suit under *Ex parte Young*." *Sullivan v. Ferguson*, 636 F. Supp. 3d 1276, 1287 (W.D. Wash. 2022); *see Ex parte Young*, 209 U.S. 123 (1908); *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (finding that an *Ex parte Young* analysis is "closely related—indeed overlapping—with the traceability and redressability inquiry" (citation modified)). The Court begins with consideration of sovereign immunity and the *Ex parte Young* doctrine, then considers standing and, in particular, redressability.

### 1. Sovereign Immunity: The *Ex parte Young* Doctrine

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Accordingly, the Eleventh Amendment protects states from suits brought by individuals in federal court." *In re Conditions at Lake County Jail*, 638 F. Supp. 3d 1164, 1170 (D. Mont. 2022). Relevant here, however, is an exception to that rule that the Supreme Court derived in 1908 in *Ex parte Young*, 209 U.S. 123 (1908).

"[I]n *Ex parte Young*, [the Supreme] Court recognized a narrow exception [to states' sovereign immunity] grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 595 U.S. at 39. As the Ninth Circuit has explained, the *Ex parte Young* exception applies to "'action for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law' so long as the state officer 'has some connection with enforcement of

the act.'" *Mecinas*, 30 F.4th at 903 (quoting *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)).

But "*Ex parte Young*'s limited exception allowing suits against state officials who enforce statutes does not generally allow for injunctive relief directly against state courts, judges, or court employees." *Fial v. Cozine*, No. C25-1474, 2025 WL 3158399, at *4 (D. Or. Nov. 12, 2025). That the *Ex parte Young* doctrine does not generally apply to suits against state judiciaries is clearly established in the *Ex parte Young* opinion itself: "[T]he right to enjoin an individual, even though a state official . . . does not include the power to restrain the court from acting in any case brought before it . . . . [A]n injunction against a state court would be a violation of the whole scheme of government." *Ex parte Young*, 209 U.S. at 163. Put another way, "The difference between the power to enjoin an individual from doing certain things, and the power to enjoin courts from proceeding in their own way to exercise jurisdiction, is plain, and no power to do the latter exists because of a power to do the former." *Id.* In 2021 in *Whole Woman's Health*, the Supreme Court underlined *Ex parte Young*'s proscription against enjoining state courts from exercising jurisdiction: "[A]s *Ex parte Young* explained, [its] traditional exception [to sovereign immunity] does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Woman's Health*, 595 U.S. at 39.

Plaintiffs—who, like the petitioners in *Whole Woman's Health*, purport to seek to enjoin a state-court clerk from docketing a case—assert that *Whole Woman's Health* is inapposite here. *See* Dkt. No. 24 at 9. But Plaintiffs' explanation as to why the Court should disregard the straightforward holding in *Whole Woman's Health* falls short. Plaintiffs attempt to distinguish Defendant's actions here from those at issue in *Whole Woman's Health* by arguing that in *Whole Woman's Health*, "clerks lacked any direct enforcement connection, whereas here, Clerk Enlow's official actions perpetuate a live federal jurisdictional violation under federal Indian

law." Dkt. No. 24 at 9. Plaintiffs assert that the conduct in *Whole Woman's Health* involved "non-enforcement acts by court clerks." *Id.* at 11. In contrast, Defendant's conduct here "enables actual, jurisdictional violations in an area where Congress has specifically withdrawn state authority." *Id.* Plaintiffs' argument appears to be that a "non-enforcement act"—what the clerk in *Whole Woman's Health* was purportedly doing—is different from conduct that "enables" a jurisdictional violation—what Defendant here is allegedly doing. But Plaintiffs do not define what a so-called "non-enforcement act" is. They do not explain what it means to "enable" a jurisdictional violation. They do not discuss how such enabling is not a "non-enforcement act." And they do not explain why or how the distinction is meaningful.[7]

In *Whole Woman's Health*, the Supreme Court determined that the petitioners' primary purpose for enjoining the state-court clerk's act of docketing was part of a broader attempt to restrict the state court from exercising its jurisdiction over a particular type of case. That is, the point of the injunction there was not merely to preclude a state-court clerk from performing her ministerial docketing duties. Rather, it was to erect a barrier that prevented certain cases from being heard at all. The core issue concerned process, not paperwork. Similarly here, although Plaintiff seeks to enjoin Defendant "from performing any ministerial acts that facilitate state court proceedings in [the *Wa He Lut* case]" (Dkt. No. 8 at 18). Plaintiff's broader intention is not to merely keep Defendant from docketing motions and orders that facilitate the judicial process. Rather, as demonstrated by the relief sought in their Complaint, and by the argument presented in their motion, Plaintiffs' civil action is really an attempt to prevent the Thurston County Superior Court from deciding the merits of—or from exercising jurisdiction over—the *Wa He Lut* case. The disputed action in *Whole Woman's Health* was a state-court clerk's role in the

---

[7] *See also infra* Section III.B.2.

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 12

execution of what the petitioners believed to be an unconstitutional law that empowered private citizens to civilly enforce a statutory ban on abortions against abortion providers. *See Whole Woman's Health*, 595 U.S. at 36. The disputed action here is a state-court clerk's role in what Plaintiffs believe to be a "violation [of] federal Indian law." Dkt. No. 24 at 9. To be sure, these are not congruent things. But viewed specifically through the prism of the Supreme Court's holdings in *Ex parte Young* and *Whole Woman's Health,* as the Court does here, the Court does not discern a meaningful difference. After all, in "fil[ing] cases as they arrive," *Whole Woman's Health*, 595 U.S. at 40, the state-court clerk in *Whole Woman's Health* would "perpetuate," or "facilitate" (Dkt. No. 8 at 16)—to use Plaintiffs' words—the purported Constitutional violation presented by the disputed state law. The clerk would crank the gears of the judicial machinery, and petitioners would be caught in the teeth. Here, too, Defendant dockets motions and orders in the *Wa He Lut* case and, in so doing, cranks the gears of the judicial machinery. Plaintiffs are subsequently caught in its teeth. For the Supreme Court in *Whole Woman's Health*, the salient point is that the machinery at work is *judicial*, and is therefore beyond the purview of *Ex parte Young.*[8] Moreover, as the Ninth Circuit has subsequently affirmed, "[j]udges 'do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties.' *Id.* And any errors made by state-court judges can be remedied through 'some form of appeal.'" *Munoz v. Superior Court of Los Angeles County*, 91 F.4th 977, 980 (9th Cir. 2024) (quoting *Whole Woman's Health*, 595 U.S. at 39)). Therefore, "[t]he *Ex parte Young* exception 'does not normally permit federal courts to issue injunctions against state-court judges.'" *Id.* The same applies with equal force to court clerks who are part of the judicial machinery. *See Whole Woman's Health*, 595 U.S. at 40.

---

[8] None of the cases cited by Plaintiffs (*see* Dkt. No. 24 at 7–9) overcomes the admonishments in *Ex parte Young* and *Whole Women's Health* against a federal court's interfering in the judicial operations of the states.

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 13

Plaintiffs cite *Courthouse News Service v. Gilmer*, an Eighth Circuit case decided after *Whole Woman's Health* that found circumstances where a federal court *could* enjoin state-court officials under the *Ex parte Young* doctrine. 48 F.4th 908, 912 (8th Cir. 2022). In that case, the Eighth Circuit drew a distinction between an *impermissible* injunction that "would 'restrain a [state] court from acting' or from 'exercis[ing] jurisdiction,'" and a *permissible* injunction that would merely require a state-court official "to carry out their 'administrative dut[ies] differently.'" *Id.* (first quoting *Ex parte Young*, 209 U.S. at 163, then quoting *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131–32 (8th Cir. 2019)). But *Courthouse News Service* only clarifies the problem with Plaintiffs' argument. As discussed above, Plaintiffs here are clearly asking the Court to restrain the state court's exercise of jurisdiction. The aim of the injunction is not to have Defendant "carry out [her] administrative duties differently"; it is to preclude Defendant from carrying them out at all. *See* Dkt. No. 8-1 (proposed order) at 2 (proposing to enjoin Defendant "from performing any ministerial acts that facilitate state court proceedings" in the *Wa He Lut* case).

### 2.    Redressability

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendant appears to concede the first element but contests whether Plaintiff has established the second and third. *See* Dkt. No. 22 at 10–11 (acknowledging "injuries alleged by the plaintiffs" without questioning the legal sufficiency of those injuries); *see also* Dkt. Nos. 9 (Chi-Tol-Bia Mills Decl.), 10 (Clarence Sidney Mills Decl.),

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 14

11 (Yesmowit Mills Decl.), 12 (Sy-Kah Mills Decl.), 13 (Cook Decl.), 14 (Ervina McCloud Decl.).

Defendant's position is that "Clerk Enlow, in her official capacity, is not an adversary of plaintiffs in their dispute with the Wa He Lut School in the State Case. The county clerk simply dockets the matter and maintains an accurate record of the proceedings." *Id.* at 10. Consequently, as to the "fairly traceable" requirement, "[t]he injuries alleged by the plaintiffs, namely, that Judge Lanese wrongfully denied their motion to dismiss, or that the dispute between plaintiffs and the Wa He Lut School in the State Case is wrongfully being heard in state court, are not fairly traceable to the conduct of the county clerk." *Id.* at 11. "Similarly," Defendant asserts, as to the redressability requirement, "enjoining Clerk Enlow from carrying out her proscribed [*sic*] duties to accurately record the proceedings and docket matters will not address the plaintiffs' alleged harm," because such an injunction "does not reverse the prior rulings of Thurston County Superior Court, nor does it stay the proceedings of the State Case." *Id.*

For their part, Plaintiffs respond that the instant case "presents a live federal question: whether the Wa He Lut parcel is 'Indian country' under 18 U.S.C. § 1151(b)." Dkt. No. 24 at 7. "If so," Plaintiffs argue, "state court proceedings there—including those facilitated by Clerk Enlow—would violate federal statutes that reserve exclusive jurisdiction to federal and tribal authorities . . . ." *Id.* In Plaintiffs' view, the case presents a question of "the availability of injunctive relief to prevent unlawful state intrusion into Indian country." *Id.*

The Court acknowledges that Plaintiffs seek to "prohibit[] defendant Linda Myhre Enlow, in her official capacity as clerk of the Superior Court for Thurston County, from performing any ministerial acts that facilitate state court proceedings in Wa He Lut Indian School v. Anza Smith . . . pending final resolution of this action." Dkt. No. 8 at 18. But Defendant has asserted—and Plaintiffs have not rebutted—that even if Plaintiffs were granted

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 15

the requested injunction, "it would not stop the [*Wa He Lut* case] from progressing. Instead, the case would proceed without the assistance of a court clerk to properly maintain the records or ensure their accuracy." Dkt. No. 22 at 17.

Plaintiffs' failure to respond to this assertion could suggest that their goal of removing of Defendant from the state-court proceedings is merely a cynical attempt to hamstring the state court—that is, Plaintiffs' silence on the issue suggests that they do not actually expect to stop the state court from adjudicating their case, so they instead seek to stop the state court from adjudicating their case without the court clerk's services. The Court will not speculate on the dominoes that may or may not successively fall if the *Wa He Lut* case is deprived the use of Defendant's services but, based on Defendant's assertion—and Plaintiffs' failure to rebut that assertion—the termination of the offending case against Plaintiffs does not appear to be one of them. All that said, the Court chooses to believe that it is unlikely that Plaintiffs would have filed and litigated the instant motion for a preliminary injunction while knowing full well that the desired relief would actually yield no meaningful result. Further, that merely blocking Defendant from participating in the state-court proceedings is not Plaintiffs' true aim here is evident from additional arguments in their motion practice. Plaintiffs assert that "[t]hey seek . . . prospective relief to enforce controlling federal statutes . . . that categorically divest state courts of jurisdiction over property rights in Indian country." Dkt. No. 24 at 14. Merely removing Defendant from the proceedings would not result in the enforcement of controlling federal statutes. It would simply block one official's participation in case-management activities.

Plaintiffs also assert, in an argument independent from that based on *Ex parte Young*, that "[f]ederal courts have consistently recognized the availability of injunctive relief to prevent unlawful state intrusion into Indian country." Dkt. No. 24 at 7. This suggests that they do in fact seek a larger jurisdictional injunction, not just Defendant's ministerial nonparticipation in the

state-court case. In support of their position, Plaintiffs cite *Ute Indian Tribe v. Lawrence*, 875 F.3d 539 (10th Cir. 2017), as a case that "is directly on point regarding" injunctive relief against state courts. Dkt. No. 24 at 9. First, the assertion that *Ute Indian Tribe*—a case where plaintiffs challenged a state-court's jurisdiction—is "directly on point" underlines Plaintiffs' true aim here: the preclusion of the state court from exercising jurisdiction, not merely the preclusion of Defendant from doing her job. Second, in *Ute Indian Tribe*, which was not an *Ex parte Young* case, the Tenth Circuit enjoined a state-court proceeding on the basis that the state court lacked subject-matter jurisdiction over a state-law contract dispute that had arisen on tribal land. 875 F.3d at 548. The Tenth Circuit asserted in dicta that "federal courts generally have jurisdiction to enjoin the exercise of state regulatory authority (which includes judicial action) contrary to federal law." *Id.* at 543. However, the Tenth Circuit did not cite any authority for this assertion which, on its face, appears to contradict *Ex parte Young*'s holding that "an injunction against a state court would be a violation of our whole scheme of government." *Ex parte Young*, 209 U.S. at 163. It also appears to be incompatible with the later holding of *Whole Woman's Health* (and, for that matter, *Munoz*), that federal courts are not normally permitted to issue injunctions against state-court judges or clerks. *See* 595 U.S. at 39.

Because *Ute Indian Tribe* is not binding authority in the Ninth Circuit, and because *Whole Woman's Health* and *Munoz*—which are binding authority here—appear to squarely block its applicability on this point, the Court is not inclined to give it precedence. In sum, the Court finds that Plaintiffs have failed to satisfactorily establish redressability.

**B.    *Rooker-Feldman* Doctrine**

Under the *Rooker–Feldman* doctrine,[9] a federal district court does not have subject-

---

[9] The doctrine derives from the cases of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

matter jurisdiction to hear a direct appeal from the final judgment of a state court, and the United States Supreme Court is the only federal court with jurisdiction to hear such an appeal. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). The appropriate manner for a party disappointed by a decision of a state court is to:

> seek reversal of that decision by appealing to a higher state court. A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court. In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties.

*Id.* at 1155. There are two aspects of the *Rooker-Feldman* doctrine.

First, "*Rooker-Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment. . . . If a plaintiff brings a de facto appeal from a state court judgment, *Rooker-Feldman* requires that the district court dismiss the suit for lack of subject matter jurisdiction." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). A "forbidden de facto appeal under *Rooker-Feldman* [arises] when the plaintiff in a federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel*, 341 F.3d at 1163 (9th Cir. 2003).

Second, "[i]f issues presented in a federal suit are 'inextricably intertwined' with issues presented in a forbidden de facto appeal from a state court decision, *Rooker-Feldman* dictates that those intertwined issues may not be litigated." *Kougasian*, 359 F.3d at 1142 (quoting *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)). "Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought."

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 18

### 1.    De Facto Appeal

In *Noel v. Hall*, the Ninth Circuit described "two kinds of cases in which such a forbidden de facto appeal might be brought," the second of which is relevant here. *Id.* In such cases, "the federal plaintiff may complain of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants." *Id.* This description neatly characterizes Plaintiffs' case here. That is to say, Plaintiffs "did not suffer an injury out of court and then fail to get relief from state court; [their] injury came from the state court judgment" itself. *Id.* at 1164–65 (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728–29 (7th Cir. 1993)) (citation modified).

"Deciding whether a federal action is a prohibited de facto appeal hinges on a careful review of the plaintiff's requested relief." *Witzke v. Idaho State Bar*, 643 F. Supp. 3d 1093, 1110 (D. Idaho 2022) (citing *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012). "An action is a de facto appeal when 'the losing party in state court file[s] suit in federal court after the state proceedings end[], complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).

Here, simply put, Plaintiffs complain of an injury caused by state-court decisions and seek review and rejection of those decisions. Plaintiffs' position is that: (1) they posed a jurisdictional question to the state court; (2) the state court got the answer wrong; and (3) as a result, Plaintiffs have sustained injury. Plaintiffs have pleaded:

> The state court's continued exercise of jurisdiction, despite undisputed admissions and public records establishing the land's status as Indian country under 18 U.S.C. § 1151(b), has irreparable [*sic*] harmed the plaintiffs' federally protected rights of self-governance, treaty rights, and educational autonomy.

Dkt. No. 1 ¶ 6. Crucial here are the terms "state court" and "continued." First, that the issue concerns state-court action invokes *Rooker-Feldman.* And second, that the state court's exercise of jurisdiction is "continued" is the result of several *decisions* that that court has made regarding its authority to exercise jurisdiction. The state court's subject-matter jurisdiction is an issue that has been decided by the state court several times, in several orders. These decisions are, as pleaded by Plaintiffs, direct causes of their alleged harm. The state court's "continued exercise" of subject-matter jurisdiction over the *Wa He Lut* case stems directly from the state court's decisions that it has subject-matter jurisdiction over the case. Plaintiffs here have sought dismissal of the *Wa He Lut* case in Superior Court multiple times on the basis that the state court lacks subject-matter jurisdiction. *See* Dkt. No. 1-10 (state-court denial of motion to dismiss); 1-12 (state-court denial of summary judgment); 1-13 (state-court denial of reconsideration). Time and again, however, the state court has denied Plaintiffs' entreaties through formal rulings and orders.

Having been rebuffed in state court, Plaintiffs now "seek declaratory and injunctive relief to halt ongoing state interference in areas committed exclusively to federal and tribal jurisdiction . . . ." Dkt. No. 1 ¶ 8. Further, Plaintiffs state in their Complaint that they challenge "unlawful acts by a state clerk *and related actors*, . . . that intrude upon areas of exclusive federal and tribal control." *Id.* ¶12 (emphasis added). Language such as this demonstrates that, upon "a careful review of the plaintiff[s'] requested relief," *Witzke*, 643 F. Supp. 3d at 1110, it is clear that Plaintiffs are asking this Court to undo the state court's decision(s) to exercise subject-matter jurisdiction over the *Wa He Lut* case. Indeed, in their Complaint, Plaintiffs seek judgment that, among other things, declares "that the pending state court action . . . asserts jurisdiction preempted by federal law . . . ." Dkt. No. 1 at 23. This is a specific rebuke of the state court's

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 20

multiple decisions regarding its jurisdiction over the *Wa He Lut* case. *See, e.g.*, Dkt. No. 1-10 ("The Motion [to Dismiss] fails to establish the Court lacks subject matter jurisdiction.").

Further analysis of Plaintiffs' pleading demonstrates that the subject matter of their federal complaint in the instant case derives from "the Superior Court[']s deni[al] [of] motions to dismiss for lack of subject matter jurisdiction." Dkt. No. 1 ¶ 40. Plaintiffs allege that "the Superior Court denied a motion for summary judgment raising the same jurisdictional defects, further entrenching its position and underscoring its ongoing retention of authority where none exists." *Id.* ¶ 42. And Plaintiffs allege that the Superior Court denied a motion for reconsideration "challenging the Superior Court's jurisdiction and standing rulings . . . ." *Id.* ¶ 43. Put differently, the Complaint indicates that, but for these rulings in state court, the instant case would not be in this Court today.

Plaintiffs argue that they "do not seek an order reversing or modifying a state judgment." Dkt. No. 24 at 14; *see also* Dkt. No. 1 ¶ 12. Rather, "[t]hey seek only prospective relief to enforce controlling federal statutes . . . that categorically divest state courts of jurisdiction over property rights in Indian country." *Id.* Plaintiffs assert that "no final (or even interlocutory) state court judgment on the federal question exists." *Id.* It is true that no *judgment* has issued from the Superior Court. But in the Ninth Circuit, *Rooker-Feldman* applies to "decisions," not judgments exclusively. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021) ("[T]he doctrine applies to both final and interlocutory decisions from a state court."). The state court has decided the federal question three times. Plaintiffs asked the state court a question—whether federal law precludes the state court from exercising jurisdiction over the *We Ha Lut* case—and were dissatisfied with the state court's answers. In their Complaint, they now seek—among other things—to ask this Court to answer the same question, asserting that the state court's answer was void because it never had jurisdiction to answer it.

There are two problems with Plaintiffs' request. First, if this Court were to declare that the Superior Court was wrong, it would be an impermissible "rejection" of a state-court decision. Second, Plaintiffs' logic conflates the question with the answer. Plaintiffs assert that the *Rooker-Feldman* doctrine "does not, and cannot, bar this Court from exercising jurisdiction over original federal claims that state courts are expressly forbidden by Congress from adjudicating." Dkt. No. 24 at 15. But the "original federal claims that state courts are expressly forbidden by Congress from adjudicating" are not what are at issue in this case in this Court. *This* case is about whether the state court has jurisdiction to hear the so-called "original federal claims." *See, e.g.*, Dkt. No. 1 ¶ 64. A state court may well be pre-empted from exercising jurisdiction over certain cases that arise in Indian country. But a state court is *not* precluded from exercising its jurisdiction over the question of whether it may exercise jurisdiction. Put another way, state courts are competent to determine the initial, threshold inquiry as to whether they may adjudicate a federal question. They may, as Plaintiffs allege here, get the question of jurisdiction wrong—but that does not mean that they were prohibited from having answered it in the first place.

After all, in establishing lack of subject-matter jurisdiction as a defense to a claim for relief, Washington Court Rule 12(b)(1)—which mirrors Federal Rule of Civil Procedure 12(b)(1)—necessarily contemplates a Superior Court's authority to rule on the question of whether it may or may not exercise jurisdiction over a case. If it had no such authority, then a court's decision to dismiss for lack of subject-matter jurisdiction would instantly create a paradox: If the court lacked subject-matter jurisdiction, then its decision that it lacked subject-matter jurisdiction would necessarily be void, because it would not have had the authority to make it. Moreover, the fact that subject-matter jurisdiction turns on a question of federal law does not deprive the state court of that authority. State courts can and do decide federal questions, including jurisdictional ones. *See Flying T Ranch, Inc v. Stillaguamish Tribe of*

*Indians*, 31 Wn. App. 2d 343, 350, 549 P.3d 727 (2024) ("Whether tribal sovereign immunity applies is a question of federal law [the state Court of Appeals] reviews de novo."); *see also Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 911 (10th Cir. 2022) (Briscoe, J., dissenting) ("It is indisputable that the Utah state courts are capable of determining for themselves whether or not they have jurisdiction over Becker's action against the Tribe. And in the event that the Utah state courts finally rule against the Tribe on this issue, the Tribe can seek review from the United States Supreme Court.").[10]

### 2.    Inextricably Intertwined

"A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1158. "Only when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play." *Id.* Having determined that Plaintiffs' case here represents, at least in part, an impermissible de facto appeal, the Court turns to whether any remaining issues are "inextricably intertwined" with the issues presented in the de facto appeal.

Even if the Court credits Plaintiffs' position that they are not appealing a state-court decision *per se*, the claims that might be construed as *not* comprising a de facto appeal are still inextricably intertwined with those that do. "It is immaterial that [Plaintiffs] frame[] [their] federal complaint as a constitutional challenge to the state court's decision, rather than as a direct appeal of that decision." *Cooper*, 704 F.3d at 781 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 859,

---

[10] Indeed, this is also exactly what happened in *Landauer v. Landauer*, 95 Wn. App. 579, 586, 975 P.2d 577 (1999), a case cited by Plaintiffs where the Washington Court of Appeals held that the "trial court [had] exceeded the scope of its jurisdiction." *See* Dkt. No. 24 at 7 (citing case as *In re Marriage of Landauer*).

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 23

900 n.4 (9th Cir. 2003)) (citation modified). Here, the claims that do not represent *direct* challenges to the state-court decisions, but which nevertheless suggest an examination into whether they are inextricably intertwined with them, are Counts II and IV of Plaintiffs' Complaint.

In Count II, a claim brought under 42 U.S.C. § 1983, Plaintiffs allege that "Defendant, acting under color of state law, has facilitated and continues to facilitate a state court proceeding that unlawfully asserts jurisdiction over disputes arising within Indian country. Such conduct violates Plaintiffs' federally protected rights of self-governance and territorial integrity." Dkt. No. 1 ¶ 58. On its face, this is a challenge to the state-court clerk's day-to-day conduct as a public servant of the Superior Court, not to the state-court judge's decision. *See id.* ¶ 63. Indeed, Plaintiffs "expressly clarify" that the relief they seek under Section 1983 is "to enjoin[] the ministerial and enforcement acts of the Clerk of the Superior Court for Thurston County, [not] any judicial acts o[f] the state court or its judges." *Id.* The question is thus whether a Superior Court clerk's "ministerial and enforcement" acts, as they relate to the prosecution of a given civil action, represent an exercise of the Superior Court's jurisdiction over a case. The Court finds that they do.

A counterfactual hypothetical confirms this. Consider circumstances where the Superior Court *grants* Plaintiffs' motion to dismiss the *Wa He Lut* case for lack of subject-matter jurisdiction, but the court clerk refuses to docket the order of dismissal. The court would not continue to preside over the case, would not continue to hold hearings and make decisions, on the basis that the clerk's failure to docket the order forces its continued adjudication of—and exercise of jurisdiction over—the case. Indeed, that would be absurd: The case is concluded, the matter dismissed, and the clerk cannot compel the court to find otherwise. With respect to the court's exercise of jurisdiction over a given case, then, the clerk's actions carry no independent

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 24

authority. That is, the clerk does what the court says. *See* RCW 2.32.050(6) (codifying clerk's duty, "*under the direction of the court*, to enter its orders judgments and decrees" (emphasis added)). Certainly, as Plaintiffs point out in their briefing, court clerks in Washington have executive responsibilities. *See* Dkt. No. 24 at 13 (citing RCW 2.32.050).[11] Independently exercising (or not exercising) jurisdiction over a judicial matter, however, is not one of them, especially in the purportedly "ministerial" context here, where the clerk only exercises their duties "as directed by court rule or statute" or "under the direction of the court." *See* RCW 2.32.050(4)–(6). Where Plaintiffs seek to compel Defendant to perform her job differently in this specific regard, they seek to compel the *court* to instruct her contrarily to the direction(s) given in the disputed orders. And to do that here—that is, to preclude the clerk from doing her job such that the court's exercise of jurisdiction over the *Wa He Lut* case is no longer feasible—would require a ruling that is inextricably intertwined to the state court's decisions on subject-matter jurisdiction in that case.

The same analysis applies to Count IV, for injunctive relief. In Count IV, "Plaintiffs seek preliminary and permanent injunctive relief prohibiting Defendant, in her official capacity, from performing any ministerial or enforcement acts in connection with the [*Wa He Lut*] case . . . , because that case unlawfully asserts jurisdiction over Indian Country in violation of federal law." Dkt. No. 1 ¶ 70. Like Count II, this claim complains of conduct that is performed under the direction of the state court. Consequently, it is inextricably intertwined with the de facto appeal discussed above.

\*    \*    \*

---

[11] Such duties include the "power to take and certify the proof and acknowledgment of a conveyance of real property, or any other written instrument authorized or required to be proved or acknowledged, and to administer oaths in every case when authorized by law." RCW 2.32.050. But the clerk's authority to perform such tasks is irrelevant to the subject matter of this case.

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 25

In sum, the Court finds merit in three of Defendant's procedural challenges to Plaintiffs' case—sovereign immunity, standing, and *Rooker-Feldman*. Given the Court's position regarding these three challenges, the Court need not consider the fourth—i.e, quasi-judicial immunity— because "[s]everal legal doctrines appear to preclude some or all of [Plaintiffs'] claims." *Harrison*, 2026 WL 295712, at *2.

The Court expresses no opinion on the ultimate disposition of this case. At this procedural posture, however, Defendant has cast sufficient doubt on Plaintiffs' likelihood of success on the merits to defeat the instant motion. *See id.* Further, because the Court can reasonably determine that Plaintiffs have not demonstrated a likelihood of success on their claims on the record before it, Plaintiffs have not raised serious questions going to the merits, and the Court need not consider the latter three *Winter* factors. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("[A] 'court need not consider the other factors' if a movant fails to show a likelihood of success on the merits." (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017))).

## IV.   CONCLUSION

Therefore, Plaintiffs' motion for preliminary injunction (Dkt. No. 8) is DENIED.

Dated this 3rd day of April, 2026.

Tana Lin
United States District Judge

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 26